UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| MID VERMONT CHRISTIAN SCHOOL, on behalf of itself and its students and its students' parents; A.G. and M.G., by and through their parents and natural guardians, Chris and Bethany Goodwin; CHRISTOPHER GOODWIN, individually; BETHANY GOODWIN, individually; T.S. and K.S., by and through their parents and natural guardians, Nathaniel and Dawna Slarve; NATHANIEL SLARVE, individually; and DAWNA SLARVE, individually;<br><br>      Plaintiffs,<br> v.<br><br>HEATHER BOUCHEY, in her official capacity as Interim Secretary of the Vermont Agency of Education; JENNIFER DECK SAMUELSON, in her official capacity as Chair of the Vermont State Board of Education; CHRISTINE BOURNE, in her official capacity as Windsor Southeast Supervisory Union Superintendent; HARTLAND SCHOOL BOARD; RANDALL GAWEL, in his official capacity as Orange East Supervisory Union Superintendent; WAITS RIVER VALLEY (UNIFIED #36 ELEMENTARY) SCHOOL BOARD; and JAY NICHOLS, in his official capacity as the Executive Director of The Vermont Principals' Association,<br><br>      Defendants. | Civil Case No.: 2:23-cv-00652 |

## SCHOOL DEFENDANTS' MOTION TO DISMISS

NOW COME Defendants, Christine Bourne, in her official capacity as Windsor Southeast Supervisory Union Superintendent; Hartland School Board; Randall Gawel in his official capacity as Orange East Supervisory Union Superintendent and Waits River Valley (Unified #36

Elementary) School Board ("School Defendants"), by and through their attorneys, Lynn, Lynn, Blackman & Manitsky, P.C., and hereby request that the Court dismiss all claims against them in this action pursuant to Fed. R. Civ. P. 12(b)(1) and (6). In support thereof, the School Defendants respectfully submit the following Memorandum of Law.

## MEMORANDUM OF LAW

The claims in this case concern allegations about decisions made by the State of Vermont and the Vermont Principals Association ("VPA"). It appears that Plaintiffs added the School Defendants in an abundance of caution because they ultimately send the tuition checks to approved independent schools such as Plaintiff Mid Vermont Christian School. However, by statute, the School Defendants have no decision-making authority about which private schools receive Vermont tuition dollars. The Court must dismiss School Defendants because Plaintiffs lack standing on any of the claims against them.

Equally significant, Plaintiffs' claims are moot because, following guidance from the State, the School Defendants have paid the tuition in question to Mid Vermont Christian School.

Finally, the Court should dismiss for failure to state a claim because Plaintiffs fail to identify any policy or custom of the School Defendants that is the cause of the alleged harm. Rather, the School Defendants have simply complied with Vermont law.

Accordingly, the Court should grant the motion to dismiss for lack of standing, mootness, and failure to state a claim.

**I.     Background**

For purposes of this motion only, the School Defendants summarize the following relevant allegations set forth in Plaintiffs' Complaint and accompanying Exhibits. *Newman & Schwartz v. Asplundh Tree Expert Co., Inc.*, 102 F.3d 660, 662 (2d Cir. 1996) ("on a motion to dismiss we

presum[e] that general allegations embrace those specific facts that are necessary to support the claim").[1]

Plaintiff Mid Vermont Christian School ("Mid Vermont") is a private, Christian, pre-K through 12th grade school located in Quechee, Vermont. Compl. ¶ 29. Mid Vermont has students attending this year who have previously participated in the state's Town Tuitioning Program and who desire to continue participating in the program. *Id.* ¶ 31. Pursuant to the Town Tuitioning Program, Vermont school districts must either maintain their own high school or "provide for the high school education of its students by paying tuition to a public high school, an approved independent high school, or an independent school meeting education quality standards, to be selected by the parents or guardians of the student, within or outside the State." *Id.* at ¶ 126 (quoting 16 V.S.A. § 822(a)(l)). The Vermont Agency of Education ("Agency") decides which schools are approved as "independent schools" capable of receiving public benefits in the state, including funding through the Town Tuitioning Program. *Id.* at ¶ 81. According to Plaintiffs, the Agency denied Mid Vermont's application for approved independent status and instead designated it as a recognized school, which designation meant that the School Defendants were barred from sending Town Tuitioning funds to Mid Vermont. *Id.* at ¶ 82. Nonetheless, the School Defendants fulfilled their statutory obligation to pay tuition requests for certain Plaintiffs to attend Mid Vermont, but Mid Vermont sent those tuition checks back to the School Defendants. *Id.* at ¶¶ 84-94. After the School Defendants received guidance from the State that Mid Vermont is still an Approved Independent School, they sent the tuition checks to Mid Vermont a second time. *See* Bourne and Gawel Affidavits, attached as Exhibits A and B.

---

[1] However, if "jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings[.]" *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citation omitted).

3

Plaintiffs acknowledge that the Vermont State Board of Education is charged with oversight of the Town Tuitioning Program. *Id.* at ¶ 127. The approved independent school designation is conferred by the Vermont State Board of Education and recognized by the Agency. *Id.* at ¶ 136. Apparently, the Agency denied Mid Vermont's designation as an approved independent school capable of participating in the State's Town Tuitioning Program because of Mid Vermont's refusal to abide by certain anti-discrimination pledges, pursuant to an Agency Rule. *Id.* at ¶ 156. After School Defendants sent Town Tuitioning Program tuition payments to Mid Vermont in September 2023 for the 2024 school year, Mid Vermont informed the School Defendants of its change in Agency status and the corresponding implication that the School Defendants therefore could not send tuition payments to Mid Vermont, and the School Defendants accordingly requested that Mid Vermont send back those payments. *Id.* at ¶¶ 172-185. After the School Defendants received guidance from the State that Mid Vermont is still an Approved Independent School, they sent back the tuition checks to Mid Vermont a second time. *See* Ex. A, B.

Based on the foregoing conduct, Plaintiffs assert six claims against the School Defendants, including: (1) Violation of the Free Exercise Clause: Religious Discrimination & Hostility; (2) Violation of the Free Exercise Clause: Not Neutral or Generally Applicable; (3) Violation of the Free Speech Clause; (4) Violation of the First Amendment: Religious Autonomy; (5) Violation of the First Amendment: Expressive Association; and (6) Violation of the Fourteenth Amendment: Fundamental Parental Right to Control the Upbringing of Children. *See generally* Compl.

**II.    All Claims against the School Defendants Must be Dismissed because Plaintiffs Lack Constitutional Standing.**

Article III of the U.S. Constitution requires that a plaintiff satisfy "three elements" of standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "First, the plaintiff must have

suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) "actual or imminent, not conjectural or hypothetical[.]" *Id.* (citations omitted). "Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* (cleaned up). "Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (citations omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* A dismissal for lack of standing is "one for lack of subject matter jurisdiction," because, where the court lacks standing, it "lacks the power to adjudicate the merits of the case[.]" *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54-55 (2d Cir. 2016).

As Plaintiffs fail to satisfy all three elements required for standing, the Court should dismiss the claims against the School Defendants.

### A. Plaintiffs Have Not Suffered an Injury in Fact

As to the first element in the standing analysis, injury in fact, the injury must be "particularized" in that it "must affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339, 136 S. Ct. 1540, 1548, 194 L. Ed. 2d 635 (2016) (citation omitted). The injury must also be "concrete" in that it "actually exist[s]" and is not "abstract[.]" *Id.* In addition, "[a] plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future." *McCormick ex rel. McCormick v. Sch. Dist. of Mamaroneck*, 370 F.3d 275, 284 (2d Cir. 2004).

Here, quite simply, Plaintiffs cannot establish injury as a matter of law, as to the School Defendants, because Plaintiffs caused the injury they now complain of. As demonstrated in

Exhibits A-D, attached herein, and as omitted from Plaintiffs' Complaint Exhibits 7 and 8, the School Defendants paid Mid Vermont pursuant to the Town Tuitioning Program for the 2024 school year.[2] Mid Vermont then reached out to the School Defendants, indicating that it was no longer an Approved Independent School, and inquiring whether it should send back such payments to the School Defendants. The School Defendants then requested return of the payments, pending guidance from the Agency. Pls.' Compl. Exs. 7, 8. Following guidance from the State that Mid Vermont is still an Approved Independent School, the School Defendants remitted the tuition checks to Mid Vermont a second time. Exs. A-F.

Additionally, and importantly, the Agency website's current directory of Vermont Independent Schools indicates that Mid Vermont is an Approved Independent School. *See* Ex. E at 10.[3] Finally, a letter from the Interim Secretary of Education Heather Bouchey to Mid Vermont, dated January 4, 2024, clarifies that Mid Vermont is currently classified as an Approved Independent School pending the Vermont State Board of Education's consideration of its application for renewal. *See* Ex. F.

Mid Vermont's "injury" is simply not concrete in that it does not "actually exist[.]" *Spokeo*, 578 U.S. at 339. The School Defendants did send Town Tuitioning Program tuition payments to Mid Vermont in September 2023 for the 2024 school year. Mid Vermont then, on its own accord, flagged for the School Defendants that their sending the payments was somehow improper. The School Defendants, aware that they are statutorily obliged to abide by the Agency's

---

[2] The emails are incorporated into the Complaint and may be considered by the Court. *See Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995).

[3] The Court may consider matters of public record. *See Zapotocky v. CIT Bank, N.A.*, 587 B.R. 589, 593 (S.D.N.Y. 2018)

designation, 16 V.S.A. §§ 822,[4] 828,[5] 166, requested return of the money pending additional guidance. However, Mid Vermont's representation to the School Defendants was incorrect. It was, at the operative time, and currently, an Approved Independent School. Once the State informed the School Defendants of Mid Vermont's approved status, they sent tuition checks to Mid Vermont a second time. Thus, School Defendants did properly provide Town Tuitioning Program payments to Mid Vermont. Mid Vermont currently has those checks in its possession. Mid Vermont's "injury" here is not only "conjectural or hypothetical[;]" it is entirely nonexistent. *Lujan*, 504 U.S. at 560.

**B. Any Purported Injury is Not Fairly Traceable to the School Defendants.**

"To satisfy the fairly traceable requirement of Article III, a plaintiff must 'demonstrate a causal nexus between the defendant's conduct and the injury.'" *Hoeffner v. D'Amato*, 605 F. Supp. 3d 467, 475 (E.D.N.Y. 2022) (quoting *Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013)). *See*

---

[4] "(a) Each school district shall maintain one or more approved high schools in which high school education is provided for its resident students unless:

> (1) the electorate authorizes the school board to close an existing high school and to provide for the high school education of its students by paying tuition to a public high school, <u>an approved independent high school, or an independent school meeting education quality standards</u>, to be selected by the parents or guardians of the student, within or outside the State; or
>
> (2) the school district is organized to provide only elementary education for its students.

\* \* \*

(c)(1) A school district may both maintain a high school and furnish high school education by paying tuition:

> (A) to a public school as in the judgment of the school board may best serve the interests of the students; or
>
> (B) <u>to an approved independent school or an independent school meeting education quality standards</u> if the school board judges that a student has unique educational needs that cannot be served within the district or at a nearby public school." (emphasis added).

[5] "<u>A school district shall not pay the tuition of a student except to</u> a public school, <u>an approved independent school, an independent school meeting education quality standards</u>, a tutorial program approved by the State Board, an approved education program, or an independent school in another state or country approved under the laws of that state or country, nor shall payment of tuition on behalf of a person be denied on account of age. Unless otherwise provided, a person who is aggrieved by a decision of a school board relating to eligibility for tuition payments, the amount of tuition payable, or the school he or she may attend, may appeal to the State Board and its decision shall be final." (emphasis added).

*Carver v. City of New York*, 621 F.3d 221, 228 (2d Cir. 2010) (finding no traceability and thus no standing, where a lottery winner brought action against city and various officials and agencies alleging he was injured by the taking of his lottery prize, because the "injuries were caused solely by the State: No action of the City caused the State to levy the challenged tax").

As Plaintiffs acknowledge in their Complaint, pursuant to Vermont statute, the School Defendants can only send Town Tuitioning Program payments to Approved Independent Schools, and the Agency is charged with designating which schools receive approved, or recognized, status. Compl. ¶¶ 125-136. Therefore, the School Defendants have no discretion, and indeed no role, in determining whether Mid Vermont is granted approved status—they must abide by whatever designation the Agency selects. Thus, any purported harm here suffered by Plaintiffs stems from—and only from—the Agency's designation, or not, of Mid Vermont as an Approved Independent School. Aware that the School Defendants were bound by such designation, Plaintiffs indicated to the School Defendants that they were not an approved school, presumably to manufacture conditions whereby they could file this lawsuit. Therefore, their sending back the tuition checks to the School Defendants "was the result of the independent action of some third party"—themselves—and fairly traceable to their misrepresentations regarding their designation, and not to any conduct by the School Defendants. *Lujan*, 504 U.S. at 560. In any event, Mid Vermont has those checks in its possession after the School Defendants voluntarily remitted them a second time.

**C. Any Purported Injury Cannot Be Redressed by the School Defendants.**

In analyzing redressability, "a court will consider the relationship between the judicial relief requested and the injury suffered." *California v. Texas*, ––– U.S. –––, 141 S. Ct. 2104, 2115, 210 L.Ed.2d 230 (2021) (citation omitted). "Relief that does not remedy the injury suffered

8

cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). In other words, "[r]edressability examines whether the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiff." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663–64 (D.C. Cir. 1996) (en banc).

Plaintiffs' purported harm cannot be redressed by the School Defendants. Again, Plaintiffs acknowledge in their Complaint that, pursuant to Vermont statute, the School Defendants can only send Town Tuitioning Program payments to Approved Independent Schools, and the Agency is charged with designating which schools receive approved, or recognized, status. Compl. ¶¶ 125-136. 16 V.S.A. §§ 822, 828, 166. The School Defendants have demonstrated that they will abide by any designation so provided. They sent Town Tuitioning Program payments to Mid Vermont, and only requested them back after Mid Vermont represented that it was not an Approved Independent School. The School Defendants will abide by whatever designation the Agency chooses for Mid Vermont, as it is statutorily required to do, but that designation is entirely out of the School Defendants' control. Thus, any "relief sought" against the School Defendants will not "alleviate the particularized injury alleged by the plaintiff[s]." *Fla. Audubon Soc'y*, 94 F.3d at 663–64.

If a plaintiff fails to satisfy any of the three standing elements, a federal court lacks subject-matter jurisdiction to hear the case and it must be dismissed. *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, LLC*, 433 F.3d 181, 198 (2d Cir.2005). Here, Plaintiffs fail to satisfy *any* of the three standing elements as to the School Defendants.

Therefore, all claims against the School Defendants must be dismissed for lack of constitutional standing.

III. **Plaintiffs' Claims against the School Defendants are Moot because the Tuition has been Paid.**

A case becomes moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Blackwelder v. Safnauer*, 866 F.2d 548, 551 (2d Cir. 1989) (citations omitted). "When this occurs, the Constitution's case or controversy requirement, U.S. Const. Art. III, § 2, is not satisfied and a federal court lacks subject matter jurisdiction over the action." *New York City Employees' Ret. Sys. v. Dole Food Co.*, 969 F.2d 1430, 1433 (2d Cir. 1992). "[A]t [the doctrine's] uncontroverted core lies the principle that, at all times, the dispute before the court must be real and live, not feigned, academic, or conjectural." *Russman v. Bd. of Educ. of Enlarged City Sch. Dist. of City of Watervliet*, 260 F.3d 114, 118 (2d Cir. 2001). *See S.R. Mercantile Corp. v. Maloney*, 909 F.2d 79, 81 (2d Cir.1990) (case moot because no order of appellate court could undo disclosure of documents); *Cook v. Colgate Univ.*, 992 F.2d 17, 19 (2d Cir.1993) (citations omitted) (equitable claims against university mooted by graduation of plaintiffs); *Jefferson v. Abrams*, 747 F.2d 94, 95-96 (2d Cir. 1984) (case moot once election held because no appellate court action could affect placement of candidates' names on ballot); *C & C Prods., Inc. v. Messick*, 700 F.2d 635, 637 (11th Cir.1983) (case moot when third party gained access to the confidential documents in issue because no order by appellate court could undo situation).

There is no "live" issue for the Court to adjudicate. *Blackwelder* 866 F.2d at 551. The School Defendants have at all times indicated that they will abide by whatever binding designation the Agency selects for Mid Vermont. The School Defendants sent tuition payments to Mid Vermont for the 2024 school year, and only requested back such payments when Mid Vermont

10

cast into doubt its own legitimacy as a recipient. The School Defendants then sent those checks back to Mid Vermont a second time once the State sent the letter attached as Ex. E. *See* Bourne and Gawel Declarations, attached as Exhibits A and B. There is simply no controversy between the School Defendants and Mid Vermont such that the Court can exercise subject matter jurisdiction. Furthermore, and independently, the purported dispute before the Court is "feigned" and "conjectural" in that Mid Vermont is currently, and has at all operative times, been designated as an Approved Independent School. *Russman*, 260 F.3d at 118.

Since the claims against the School Defendants are moot, the Court must dismiss.

**IV.** **All Claims against the School Defendants Must be Dismissed because Plaintiffs' Have Failed to Allege that the School Defendants Acted Pursuant to an Unconstitutional School Policy.**

"To survive a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Pieciak v. Crowe LLP*, No. 2:21-CV-00273, 2022 WL 10010523, at *3 (D. Vt. Oct. 17, 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. "More specifically, the plaintiff must allege sufficient facts to show 'more than a sheer possibility that a defendant has acted unlawfully.'" *Rubman v. Bayer AG*, No. 2:22-CV-181, 2023 WL 2632832, at *2 (D. Vt. Mar. 24, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. at 678. "If the plaintiff has not "nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at *5-6 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

In reviewing a motion to dismiss, the court must "accept all factual allegations in the Complaint as true and draw all reasonable inferences in the plaintiff's favor." *Adams v. Yacavone*, No. 2:13-CV-10, 2014 WL 12729278, at *2 (D. Vt. Mar. 26, 2014). "However, the Court is not required to credit 'mere conclusory statements' or '[t]hreadbare recitals of the elements of a cause of action. *Id.* at *5 (quoting *Ashcroft v. Iqbal*, 556 U.S. at 678).

"Where a plaintiff claims a constitutional violation as a consequence of the decision of a municipality to enforce an unconstitutional state statute . . . a municipality is liable for even its good faith constitutional violations **presuming that the municipality has a policy that causes those violations.**" *Vives v. City of New York*, 524 F.3d 346, 349-353 (2d Cir. 2008) (emphasis added) ("we agree with all circuits to address state laws mandating enforcement by municipal police officers that a municipality's decision to honor this obligation is not a conscious choice. As a result, the municipality cannot be liable under *Monell* in this circumstance.") (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978)). "The word policy generally implies a course of action consciously chosen from among various alternatives . . . but it also may be made by a municipal official possessing final authority to establish municipal policy with respect to the action ordered." *Vives*, 524 F.3d at 350. *See Bockes v. Fields*, 999 F.2d 788, 791 (4th Cir.1993) (holding that county board did not act in a policy-making capacity when it fired plaintiff because termination procedures and criteria were prescribed by the state although the state procedures allowed the county board some discretion); *Surplus Store and Exch., Inc. v. City of Delphi*, 928 F.2d 788, 791 (7th Cir.1991) (holding insufficient for *Monell* liability plaintiff's claim that municipality had a policy of enforcing state statutes and stating: "It is difficult to imagine a municipal policy more innocuous and constitutionally permissible, and whose causal connection to the alleged violation is more

attenuated, than the 'policy' of enforcing state law."); *Whitesel v. Sengenberger*, 222 F.3d 861, 872 (10th Cir.2000) (stating that it was not clear whether policies of state entity authorized certain actions but "emphasiz[ing] that the [municipal entity] cannot be liable for merely implementing a policy created by the state [entity]").

The Second Circuit squarely answered the inquiry of under what circumstances a "municipality can be liable for enforcing a state law[.]" *Vives*, 524 F.3d at 351. The court held, directly on point to the facts presented here, that "a mere municipal directive to enforce all state and municipal laws [does not] constitutes a city policy to enforce a particular unconstitutional statute." *Id.* at 353.

Here, the State's designation of Mid Vermont is not a policy or custom of the School Defendants. The School Defendants have no discretion in making payments pursuant to the Town Tuitioning Program, according to the designations assigned by the State. 16 V.S.A. §§ 822, 828 ("<u>A school district shall not pay the tuition of a student except to</u> . . . <u>an approved independent school, an independent school meeting education quality standards</u>"), 166. Because such payments are not a "conscious choice[,]" the School Defendants, as a matter of law, "cannot be liable under *Monell*[.]" *Vives*, 524 F.3d at 353. Accordingly, Plaintiffs' claims against the School Defendants lack facial plausibility and must be dismissed pursuant Fed. R. Civ. P. 12(b)(6).

## V. Conclusion

For the foregoing reasons, the School Defendants respectfully request that the Court dismiss all claims against them for lack of subject matter jurisdiction and/or failure to state a claim.

DATED in Burlington, Vermont this 31st day of January, 2024.

                CHRISTINE BOURNE, HARTLAND SCHOOL BOARD, RANDALL GAWEL, and WAITS RIVER VALLEY SCHOOL BOARD

By:   */s/ Pietro J. Lynn*
      Pietro J. Lynn, Esq.
      Sean M. Toohey, Esq.
      Lynn, Lynn, Blackman & Manitsky, P.C.
      *Attorney for Defendants*
      76 St. Paul Street, Suite 400
      Burlington, VT 05401
      802-860-1500
      plynn@lynnlawvt.com
      stoohey@lynnlawvt.com