UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| MID VERMONT CHRISTIAN SCHOOL, on behalf of itself and its students and its students' parents; A.G. and M.G., by and through their parents and natural guardians, Chris and Bethany Goodwin; CHRISTOPHER GOODWIN, individually; BETHANY GOODWIN, individually; T.S. and K.S., by and through their parents and natural guardians, Nathaniel and Dawna Slarve; NATHANIEL SLARVE, individually; and DAWNA SLARVE, individually,<br><br>    *Plaintiffs,*<br><br>*v.*<br><br>HEATHER BOUCHEY, in her official capacity as Interim Secretary of the Vermont Agency of Education,<br><br>JENNIFER DESK SAMUELSON, in her official capacity as Windsor Southeast Supervisory Union Superintendent;<br><br>HARTLAND SCHOOL BOARD;<br><br>RANDALL GAWEL, in his official capacity as Orange East Supervisory Union Superintendent;<br><br>WAITS RIVER VALLEY (UNIFIED #36 ELEMENTARY) SCHOOL BOARD; and<br><br>JAY NICHOLS, in his official capacity as the Executive Director of the Vermont Principals' Association,<br><br>    *Defendants.* | Civil Action No.: 2:23-cv-00652-kjd |

**DEFENDANT JAY NICHOLS' MOTION TO DISMISS THE COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6), WITH INCORPORATED MEMORANDUM OF LAW**

**GORDON REES SCULLY MANSUKHANI, LLP**
95 Glastonbury Boulevard, Suite 206
Glastonbury, CT 06033
By: Steven J. Zakrzewski
Telephone: (212) 269-5500
szakrzewski@grsm.com
*Attorneys for Defendant Jay Nichols*

# **TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT ...................................................................1

II.    SUMMARY OF FACTUAL ALLEGATIONS ..........................................3

III.   LEGAL ARGUMENT..................................................................................5

      A.    STANDARD OF REVIEW ..............................................................5

      B.    PLANTIFFS ARE PRECLUDED FROM BRINGING SUIT AGAINST DEFENDANT NICHOLS AND THE VPA...........................................................6

      C.    PLAINTIFFS LACK STANDING TO BRING SUIT AGAINST NICHOLS AND THE VPA...........................................................8

      D.    ABSTENTION DOCTRINE BARS PLAINTIFFS' CLAIMS ...........................10

      E.    PLAINTIFFS HAVE FAILED TO ALLEGE THAT THE VPA'S ACTIONS OR POLICIES AMOUNT TO CONSTITUTIONAL VIOLATIONS .......................................................................11

            i.    The VPA's Policy Does Not Violate Plaintiffs' Freedom of Religion or Speech ....................................................................12

            ii.   The VPA Has Not Interfered with Plaintiffs' Parental Right to Control the Upbringing of their Children ...................................15

            iii.  The VPA Did Not Retaliate Against Plaintiffs for Exercising their First Amendment Rights ....................................................18

IV.   CONCLUSION...........................................................................................19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Achtman v. Kirby, McInerney & Squire, LLP,*
    464 F.3d 328 (2d Cir. 2006)........................................................................................5

*Agudath Israel of Am. v. Cuomo,*
    983 F.3d 620 (2d Cir. 2020)......................................................................................12

*Amidax Trading Grp. v. S.W.I.F.T. SCRL,*
    671 F. 3d 140 (2d Cir. 2011).....................................................................................5

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..................................................................................................5

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)..................................................................................................5

*Brentwood Academy v. Tennessee Secondary School Athletic Association,*
    531 U.S. 288 (2001)..................................................................................................6

*Carver v. City of New York,*
    621 F.3d 221 (2d Cir. 2010)...................................................................................5, 8

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,*
    508 U.S. 520, 113 S. Ct. 2217, 124 L. Ed. 2d 472 (1993).......................................13

*Clementine Company, LLC v. Adams,*
    74 F.4th 77 (2d Cir. 2023) .......................................................................................12

*Cohen v. Koenig,*
    25 F.3d 1168 (2d Cir. 1994).....................................................................................6

*Cox v. Warwick Valley Cent. School Dist.,*
    654 F.3d 267 (2d Cir.2011).................................................................................17, 18

*Delozier v. State,*
    160 Vt. 426 (1993)...................................................................................................6

*Faulkner v. Caledonia County Fair Ass'n,*
    178 Vt. 51, 869 A.2d 103 (2004) ............................................................................8

*Fountain v. Karin,*
    838 F.3d 129 (2d Cir. 2016).....................................................................................5

*Goe v. Zucker*,
  43 F.4th 19 (2d Cir. 2022) .......................................................................................15

*Grocery Mfrs. Ass'n v. Sorrell*,
  102 F. Supp. 3d 583 (D. Vt. 2015), *appeal withdrawn sub nom, Grocery Mfrs.*
  *Ass'n v. Sorrell*, No. 15-1504, 2016 WL 11785969 .........................................8, 12

*Jaghory v. New York State Dept. of Educ.*,
  131 F.3d 326 (2nd Cir. 1997).....................................................................................5

*Leebaert v. Harrington*,
  332 F.3d 134 (2d Cir. 2003)......................................................................................15

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992).......................................8, 9

*Matthews v. City of New York*,
  779 F.3d 167 (2d Cir. 2015).....................................................................................17

*Nuxoll ex rel. Nuxoll v. Indian Prairie Sch. Dist. No. 204*,
  523 F.3d 668 (7th Cir. 2008) ...................................................................................14

*Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*,
  477 U.S. 619 (1986)..................................................................................................10

*Parents Defending Education v. Olentangy Local School District Board of*
  *Education*,
  Case No. 2:23-cv-01595, 2023 WL 4848509 (S.D. Oh. E. Div. 2023) ............13, 14

*Renton v. Playtime Theatres*,
  475 U.S. 41 (1986)....................................................................................................12

*Sheehan v. Department of Employment and Training*,
  169 Vt. 304 (1999)......................................................................................................6

*Smith v. Local 819 I.B.T. Pension Plan*,
  291 F.3d 236 (2d Cir. 2002)........................................................................................5

*Thomas Kibbie v. Killington/Pico Ski Resort Partners, LLC*,
  Case No. 5:16-cv-247, 2020 WL 132261209 (D. Vt. Dec. 4, 2020) ....................6, 8

*Time Warner Cable Inc. v. F.C.C.*,
  729 F.3d 137 (2d Cir. 2013)......................................................................................12

*Tinker v. Des Moines Indep. Cmty. School Dist.*,
  393 U.S. 503 (1969)..............................................................................................18, 19

*Troxel v. Granville*,
530 U.S. 57 (2000)............................................................................................15

*United States v. Vazquez*,
145 F.3d 74 (2d Cir, 1998)..................................................................................5

*University Club v. City of New York*,
842 F.2d 37 (2d Cir. 1988).................................................................................10

*University of Tennessee v. Elliott*,
478 U.S. 788 (1986)............................................................................................6

*Ward v. Rock Against Racism*,
491 U.S. 781, 109 S. Ct. 2746, 105 L.Ed.2d 661 (1989).....................................12

*Warth v. Seldin*,
422 U.S. 490 (1975)............................................................................................5

*Younger v. Harris*,
401 U.S. 37 (1971)............................................................................................10

**Constitutions**

U.S. Const. amend. I ...............................................................................14, 17, 18

U.S. Const. amend XIV ..................................................................................6, 15

**Rules**

Fed. R. Civ. P. 12(b)(1)........................................................................................5

Fed. R. Civ. P. 12(b)(6)........................................................................................5

State Board Rules Series 2200, Independent School Program Approval, Vermont
Agency of Education................................................................................4, 9, 11

**Other Authorities**

Emily Gold Waldman, *A Post-Morse Framework For Students' Potentially
Hurtful Speech (Religious and Otherwise)*, 37 J.L. & Educ. 463, 492-96
(2008) ............................................................................................................14

Eugene Volokh, *Comment: Freedom of Speech and Workplace Harassment*, 39
UCLA L. Rev. 1791, 1871–72 (1992) ...............................................................14

Vermont Agency of Education, *Continuing Best Practices for Schools
Regarding Transgender and Gender Nonconforming Students* (2017)....................3

Defendant Jay Nichols ("Nichols"), in his official capacity as Executive Director of the Vermont Principals' Association (the "VPA"), respectfully moves to dismiss the Complaint filed by Mid Vermont Christian School on behalf of itself and its students and its students' parents ("Mid Vermont Christian"),  A.G. and M.G., by and through their parents and natural guardians, Chris and Bethany Goodwin ("A.G." and "M.G."), Christopher Goodwin, individually ("Christopher Goodwin"), Bethany Goodwin, individually, ("Bethany Goodwin," and collectively with A.G., M.G. and Christopher Goodwin, the "Goodwins"), T.S. and K.S., by and through their parents and natural guardians, Nathaniel and Dawna Slarve ("T.S. and K.S."), Nathaniel Slarve, individually ("Nathaniel Slarve"), and Dawna Slarve ("Dawna Slarve," and collectively with T.S., K.S. and Nathaniel Slarve, the "Slarves"), (collectively, the "Plaintiffs"), under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

## I.   PRELIMINARY STATEMENT

The Plaintiffs have no viable cause of action against Defendant Nichols or the VPA. Though the Complaint waxes poetic about the purported grave constitutional injustices faced by Mid Vermont Christian and its students, the reality is that the only cause of Plaintiffs' alleged harm is Mid Vermont Christian's conscious choice to disregard both Vermont law and VPA administrative processes. Plaintiffs mischaracterize the circumstances of Mid Vermont Christian's administrative expulsion from the VPA to obscure the extent to which it has neglected its responsibility to continue with the VPA appeals procedure, as well as the very nature of Mid Vermont Christian's dispute with Vermont law. Plaintiffs attempt to manufacture a narrative of religious persecution and unconstitutional discrimination, but the facts described in the Complaint show that Mid Vermont Christian is the only entity attempting to exclude others from scholastic athletic competitions.

1

Mid Vermont Christian voluntarily forfeited a girls' basketball game because a transgender student was on the *other* team. It insists that its students merely sharing a court with a transgender student for a single game amounts to violation of their constitutional right to free exercise of their religion. This assertion, of course, is ludicrous—interpreting the protections of our nation's Constitution in this way would run entirely contrary to the type of religious freedom that is a bedrock of American society. People whose religion forbids them from wearing particular fabrics cannot shut down department stores selling shirts made from polyester blends; those who are compelled by religious doctrine to pray at certain times cannot force others at their workplace to stop work and worship when they do. Likewise, Mid Vermont Christian cannot seek to exclude others from athletic competition sanctioned by a voluntary athletic association governed by Vermont state law because it adheres to the particular version of religion described in the Complaint. With this action, Plaintiffs seek to limit freedom rather than protect it.

And, in any event, the merits of the causes of action related to Mid Vermont Christian's expulsion from the VPA cannot even be decided by this Court because of the doctrines of collateral estoppel and res judicata. Mid Vermont Christian acknowledges that the VPA is a state actor. The VPA, as a state actor, has a two-tiered appeal process that meets all requirements of due process and all standards for applying claim preclusion. Mid Vermont Christian had a full and fair opportunity to litigate its claims through this appeals process, and the VPA's Activities Standards Committee issued a final, binding decision that Mid Vermont Christian chose not to appeal further despite its right to do so.

Finally, the remainder of Plaintiffs' claims are centered on allegations that Mid Vermont Christian has been excluded from receiving public funds because of its religious beliefs or

practices. Plaintiffs do not—and cannot—allege that Defendant Nichols or the VPA had any involvement in these decisions, so therefore the VPA cannot be held responsible for them.

Plaintiffs' Complaint must therefore be dismissed as to Defendant Nichols in its entirety.

## II.    SUMMARY OF FACTUAL ALLEGATIONS

The VPA's Policy on Gender Identity is based on the Vermont Agency of Education Best Practices for Schools for Transgender and Gender Nonconforming Students and the Vermont Public Accommodations Act. Compl. ¶¶ 192-93. Plaintiffs allege that the VPA is a state actor. Compl. ¶¶ 98-99. VPA member schools "agree to abide by final decisions of the VPA." Compl. at Ex. 2, Article 8. When the VPA becomes aware that a member school has violated a VPA policy, the VPA investigates and determines whether a probable violation has taken place. Compl. at Ex. 9, p. 15 of 38. The alleged violator can then choose to have an opportunity to be heard by filing an appeal with the VPA's Activities Standards Committee. *Id.* at p. 16 of 38. The alleged violator must submit a written explanation of its actions to the VPA, which then sets a hearing where the alleged violator may introduce evidence and can be represented by counsel. *Id.* After the Activities Standards Committee makes a decision, the alleged violator may appeal the decision to the VPA's Board of Appeals, which is an independent eight-person board appointed by the VPA's executive council. *Id.* at 17-18 of 38. After an evidentiary hearing, the Board of Appeals can either uphold the Activities Standards Committee's decision, or remand the matter back to the Activities Standards Committee with an instruction to consider additional information. *Id.*

In February 2023, Mid Vermont Christian's varsity girls' basketball team was scheduled to compete in a tournament playoff game against a team that had a transgender student. Compl. ¶¶ 207-09. Prior to that scheduled game, Mid Vermont Christian contacted the VPA and requested that the transgender student not be permitted to play in any game against Mid Vermont Christian. Compl. ¶ 213. The VPA denied Mid Vermont Christian's request because granting it would violate

the Vermont Agency of Education's Best Practices for Schools Regarding Transgender and Gender Nonconforming Students, as well as the VPA's own policies.  Compl. ¶ 214.  Mid Vermont Christian then refused to play and electively forfeited the playoff game.  Compl. ¶ 215.

Following the School's forfeiture, Mid Vermont Christian explained its rationale for forfeiting the game in a news publication.  Compl. at Ex. 10. After this public report, Nichols and the VPA Executive Council determined that Mid Vermont Christian was ineligible to participate in VPA-sanctioned activities.  Compl. at Ex. 10. The VPA informed Mid Vermont Christian that the reason for this determination was Mid Vermont Christian's violation of VPA gender identity policies, which were "aligned with Vermont state law." Compl. ¶ 217.

Following this decision, Mid Vermont Christian appealed to the VPA Activities Standards Committee. Compl. ¶ 230. The Activities Standards Committee held a hearing on Mid Vermont Christian's appeal. *Id.*  Mid Vermont Christian does not allege that it appealed the Activities Standards Committee's decision to the VPA's Board of Appeals. *See generally*, Compl. Instead, Mid Vermont Christian joined another activities association, the New England Association of Christian Schools ("NEACS"). Compl. ¶ 236. Mid Vermont Christian students currently participate in interscholastic athletic competitions through the NEACS. *Id.*

Plaintiffs further allege that, as a result of certain legislative changes to Vermont Rule Series 2200, Mid Vermont Christian's eligibility status as an "independent" school was not approved for the 2023-2024 school year and instead the School was designated as a "recognized" school, which affected the School's ability to participate in the Town Tuitioning and Dual Enrollment programs.  Compl. ¶¶ 131-36; 156.  It is undisputed that neither Jay Nichols nor the VPA had any involvement in that process. *See generally* Compl.

### III.    LEGAL ARGUMENT

**A.   STANDARD OF REVIEW**

Under Rule 12(b)(1), a plaintiff "asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Fountain v. Karin*, 838, F.3d 129, 134 (2d Cir. 2016). Standing "is a federal jurisdictional question 'determining the power of the court to entertain the suit.'" *Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir. 2010) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Thus, the party invoking federal jurisdiction bears the burden of establishing the elements of standing. *United States v. Vazquez*, 145 F.3d 74, 80 (2d Cir, 1998). The Court, in addressing whether a plaintiff has standing, "must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Jaghory v. New York State Dept. of Educ.*, 131 F.3d 326, 329 (2nd Cir. 1997)). However, the Court may also consider evidence outside the pleadings when deciding standing. *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F. 3d 140, 145 (2d Cir. 2011).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient facts, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). When deciding a motion to dismiss, courts must construe the pleadings broadly and assume that the facts are as plaintiff alleges; however, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Importantly, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (quoting Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002)). If it appears

that Plaintiff cannot prove that there is a set of facts to support his claim that would entitle him to relief, the Court should dismiss the claims. *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994).

## B.   PLANTIFFS ARE PRECLUDED FROM BRINGING SUIT AGAINST DEFENDANT NICHOLS AND THE VPA

As this Court has previously held, "[i]n Vermont, the doctrine of res judicata—also known as claim preclusion—holds that a final judgment in previous litigation bars subsequent litigation if the parties, subject matter, and cause(s) of action in both matters are the same or substantially identical." *Thomas Kibbie v. Killington/Pico Ski Resort Partners, LLC*, Case No. 5:16-cv-247, 2020 WL 132261209 (D. Vt. Dec. 4, 2020) (internal quotation marks omitted). Importantly, "it is not necessary for a claim to have been litigated for res judicata to apply; it is enough if the claim should have been litigated in the prior proceeding." *Id.* (internal quotation marks omitted). "'The doctrine of res judicata applies to administrative decisions when an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate.'" *Id.* (quoting *Delozier v. State*, 160 Vt. 426, 429 (1993)).

Plaintiffs allege that the VPA is a state actor. Compl. ¶¶ 98-99. As a state actor—at least for the purposes of this dispute—the VPA's appeal processes are equivalent to those of any administrative agency. This is true for constitutional claims under the Fourteenth Amendment. *See Brentwood Academy v. Tennessee Secondary School Athletic Association,* 531 U.S. 288, 298 (2001); *see also University of Tennessee v. Elliott*, 478 U.S. 788, 798-99 (1986) (when state agencies give parties an adequate opportunity to litigate, their findings have preclusive effect on Section 1983 claims). Both claim and issue preclusion apply in Vermont administrative proceedings. *See Sheehan v. Department of Employment and Training*, 169 Vt. 304, 309 (1999) ("the preclusive effect of an administrative decision may be stronger where the party did not seek judicial review of the prior decision.") (internal quotations omitted).

The VPA's administrative appeal procedure is robust and allows accused parties a full and fair opportunity to litigate their claims. When the VPA informs a party that it believes there has been a violation of its policies, the violating party has a choice to either accept the penalty for its violation or request an opportunity to be heard by filing an appeal with the VPA's Activities Standards Committee. Compl. at Ex. 9, p. 16 of 38. The Activities Standards Committee then holds a hearing, where the alleged violator may introduce evidence and can be represented by counsel. *Id.* After the Activities Standards Committee makes a decision, the alleged violator may appeal the decision to the VPA's Board of Appeals, which is an independent eight-person board appointed by the VPA's executive council. *Id.* at 17-18 of 38. The Board of Appeals then holds its own evidentiary hearing, where the violating party may once again be represented by counsel. *Id.*

When Mid Vermont Christian believed the VPA's decision to expel it from membership was improper, it filed an appeal with the Activities Standards Committee pursuant to VPA policy. After a hearing, the Activities Standards Committee ultimately upheld the VPA's decision.[1] Though Mid Vermont Christian had the right to appeal the decision of the Activities Standards Committee with the VPA's Appeals Board, which was entirely independent from the Activities Standards Committee, it did not do so. Instead, Mid Vermont Christian seeks judicial intervention despite receiving a final ruling through the administrative process in which it participated.

By overseeing Mid Vermont Christian's appeal process, the VPA functioned as an administrative arm of the State, acting in a judicial capacity to resolve disputed issues of fact and law properly before it.  The proper response to dissatisfaction with the Activities Standards Committee's decision would have been further appeal to the VPA's Board of Appeals. Mid

---

[1] The Complaint entirely misrepresents Mid Vermont Christian's appeal process and experience, in what seems to be an attempt to paint the appeal process as rushed or unfair. This documentation has been provided to the Court with its Opposition to Plaintiffs' Motion for Preliminary Injunction, and the Court should be permitted to consider it in connection with this Motion to Dismiss, particularly since it is quoted extensively (albeit selectively) in the Complaint.

Vermont Christian's failure to bring that appeal pursuant to the VPA's policy made the Activities Standards Committee's decision final and binding. Mid Vermont Christian's choice to bring the instant case rather than avail itself of its further administrative appeal rights is nothing more than a blatant attempt to subvert a binding decision. Put simply, Mid Vermont Christian is bound by the judgment it chose to accept rather than appeal.  *See Faulkner v. Caledonia County Fair Ass'n*, 178 Vt. 51, 54, 869 A.2d 103 (2004) (res judicata also bars claims that *could* have been litigated); *see also Kibbie*, 2020 WL 132261209 at *13 (D. Vt. Dec. 4, 2020).

Plaintiffs had a full and fair opportunity to present their claims to the VPA and then pursue review on appeal thereafter. Plaintiffs are bound to the Student Activities Committee's decision— made final by their own inaction—and are estopped from pursuing a second bite at the apple in a different forum. Likewise, the doctrine of res judicata prohibits Plaintiffs' attempt to invalidate the VPA's disciplinary decision in this Court. As such, Plaintiffs' Complaint must be dismissed before consideration of the merits.

## C.    PLAINTIFFS LACK STANDING TO BRING SUIT AGAINST NICHOLS AND THE VPA

Standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Grocery Mfrs. Ass'n v. Sorrell*, 102 F. Supp. 3d 583, 618 (D. Vt. 2015) (Citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992).) If Plaintiff lacks standing, then the Court has no jurisdiction to hear his claims and must dismiss the case. *See id.* (citing *Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir. 2010) ("[P]laintiff[s] must demonstrate standing for each claim and form of relief sought.")).

The burden of establishing the three elements of standing is upon the party invoking federal jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). First, a plaintiff must show that he has suffered an "injury-in-fact," in that he has

suffered invasion of a legally protected, concrete and particularized interest. *Id.* at 560. The injury must be "actual or imminent, not conjectural or hypothetical." *Id.* (internal quotations omitted). Next, a plaintiff must show that there is "a causal connection between the injury and the conduct complained of." *Id.* The alleged injury must be "fairly traceable to the challenged action of the defendant" rather than the result of an independent action by a third party. *Id.* (internal quotations omitted). Finally, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* (internal quotations omitted).

To the extent Plaintiffs attempt to connect the VPA to their allegations regarding the Town Tuitioning program or the Dual Enrollment Program described in the Complaint, neither Jay Nichols nor the VPA had any involvement in said determination or status change process. Moreover, Vermont Rule Series 2200 is distinct from the VPA's own policy. Any alleged injury caused by these rules or programs is simply not traceable to the VPA.

Furthermore, Plaintiffs' allegations that they have suffered some constitutional injury due to the VPA's Policy on Gender Identity are, at best, misguided. This policy's mere existence is not sufficient to support any allegation that Plaintiffs have been harmed by it. As discussed in greater detail *infra*, the VPA's enforcement of this policy has not encroached on Plaintiffs' ability to practice their religion or exercise their rights to free speech. The VPA made no attempt whatsoever to govern Mid Vermont Christian's internal school policies or religious doctrines. Instead, the VPA's policy was only triggered by Mid Vermont Christian's treatment of a child falling under that policy's protection. The VPA did not force Mid Vermont Christian to admit this student to its roster or teach its students a particular view on about gender identity—the extent of Mid Vermont Christian's exposure to this student was participation in a single basketball game. Rather than afford this child "compassion, love, kindness, respect, and dignity" regardless of her beliefs, Mid

Vermont Christian chose to forfeit the game to avoid its students sharing a court with her. Compl. ¶¶ 43, 215. The VPA's decision to expel Mid Vermont Christian from membership did not cause any constitutional injury. Instead, it protected the constitutional rights of a minor under the VPA's protection.

As Plaintiffs allege injuries that are not traceable to the VPA or are not supported by any factual connection to a violation of their rights or interests, the Complaint must be dismissed for lack of standing.

**D.     ABSTENTION DOCTRINE BARS PLAINTIFFS' CLAIMS**

The VPA decision that upheld the expulsion of Mid Vermont Christian School explicitly allowed a new application for membership.  That new application has never been submitted, and this case is an end run around that process. If the VPA denied such an application, the denial would be subject to the same administrative process, appeals, and judicial review that applied to the School's expulsion.  Rather than engage this process, Mid-Vermont Christian School seeks to enjoin it.   The abstention doctrine counsels federal courts to avoid interfering with proceedings in which an important state interest, like this case, is involved.

Under the well-established principles of *Younger v. Harris*, this Court should abstain from adjudicating Plaintiffs' claim. 401 U.S. 37, 91 (1971) (holding that federal court should not enjoin a pending state criminal proceeding except in the very unusual situation that an injunction is necessary to prevent great and immediate irreparable injury). The *Younger* abstention principle is properly applied to actions where an administrative proceedings involving vindication of "important state interests . . . so long as in the course of those proceedings the federal plaintiff would have a full and fair opportunity to litigate his constitutional claim." *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 627 (1986).

The State, and by extension for these purposes, the VPA, have an important interest in enforcing state anti-discrimination laws and protecting transgender students.  *See University Club v. City of New York*, 842 F.2d 37, 40 (2d Cir. 1988) (quoting *Dayton Christian Schools*, 477 U.S. at 627 ("'we have no doubt that the elimination of sex discrimination is a sufficiently important state interest to' justify *Younger* abstention")). The VPA's established processes, described *supra*, provide a full and fair opportunity to litigate any appeals, both before the Activities Standards Committee and the independent Board of Appeals. Moreover, the law confirms a right to judicial review from any VPA decision.

This case squarely falls within the standards established by *Dayton Christian Schools*. The State and the VPA have an important interest in enforcing state anti-discrimination laws and protecting transgender students.  The processes established for hearings within the VPA—both before the Activities Standards Committee and the Board of Appeals, provide a full and fair opportunity to address these claims.  Moreover, the law confirms a right to judicial review from any VPA decision.

Perhaps most importantly, the VPA Activities Standard Committee decision that upheld the expulsion of Mid Vermont Christian School explicitly allowed a new application for membership. In October, Executive Director Nichols responded to an inquiry by Mid Vermont Christian School in which he reminded the School of the now binding decision, and requested an explanation of how the School would comply with the decision to be part of any application for membership.  Mid Vermont Christian School never submitted a new application. Instead, it chose to file this case to avoid the application process, and any explanation of how it intended to comply with the VPA's now binding expulsion decision.

11

The abstention doctrine mandates that the School receive no relief from this Court.  This Court should direct the School to engage in the VPA process to pursue (and potentially appeal) a new membership application.

**E.    PLAINTIFFS HAVE FAILED TO ALLEGE THAT THE VPA'S ACTIONS OR POLICIES AMOUNT TO CONSTITUTIONAL VIOLATIONS**

Plaintiffs assert a handful of constitutional challenges to the VPA's policies. Namely, Plaintiffs challenge the VPA's Policy on Gender Identity, which states that "[t]he VPA is committed to providing all students with the opportunity to participate in VPA activities in a manner consistent with their gender identity," and that "discrimination based on a student's actual or perceived sex and gender" is prohibited. Compl. ¶¶ 192-94. [2] Plaintiffs acknowledge that the VPA's policies are grounded in Vermont state law and policy, including the Vermont Public Accommodations Act and the Vermont Agency of Education Best Practices for Transgender and Gender Nonconforming Students. *Id.* Plaintiffs also challenge the VPA's specific application of this policy that caused Mid Vermont Christian's expulsion from the VPA.

**i.    The VPA's Policy Does Not Violate Plaintiffs' Freedom of Religion or Speech**

Central to the analysis of Plaintiffs' constitutional claims based on free speech and free exercise is an analysis of whether this policy is neutral and generally applicable, or if it instead facially discriminates against a particular viewpoint or religion. *See Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 631 (2d Cir. 2020); *Grocery Mfrs. Ass'n v. Sorrell*, 102 F. Supp. 3d 583, 624 (D. Vt. 2015), *appeal withdrawn sub nom, Grocery Mfrs. Ass'n v. Sorrell*, No. 15-1504, 2016 WL 11785969 (citing *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S. Ct. 2746, 105

---

[2] Plaintiffs also assert additional constitutional challenges to Vermont Rule Series 2200. However, Plaintiffs do not allege that the VPA has adopted these rules, and have not made any other connection between these rules and the VPA. As such, Plaintiffs cannot sustain any cause of action against the VPA for enforcement of these rules with respect to the Town Tutoring and Dual Enrollment Programs or otherwise.

L.Ed.2d 661 (1989)). If the policy burdens religious conduct in a way that is not neutral or generally applicable, or if a restriction on speech is content-based, it must satisfy strict scrutiny to be constitutional. *See id.* However, where laws or policies are content neutral and generally applicable regardless of religion, they are only subject to a rational basis review. *See Agudath Israel of Am.*, 983 F.3d at 631. At the same time, if a restriction on speech is content neutral, it need only satisfy intermediate scrutiny and will be upheld if it "(1) 'advances important governmental interests unrelated to the suppression of free speech' and (2) 'does not burden substantially more speech than necessary to further those interests.'" *Clementine Company, LLC v. Adams*, 74 F.4th 77, 88 (2d Cir. 2023) (quoting *Time Warner Cable Inc. v. F.C.C.*, 729 F.3d 137, 160 (2d Cir. 2013)).

Though Plaintiffs appear to believe that, on both counts, the VPA policy must satisfy strict scrutiny-level analysis, the policy is clearly neutral, generally applicable, and only interacts with speech insofar as it would seek to prevent harmful "secondary effects" of speech rather than targeting any particular message. *See, e.g. Renton v. Playtime Theatres*, 475 U.S. 41, 47-48 (1986) (finding a zoning ordinance related to erotic theaters was content neutral because the ordinance was aimed at preventing crime and lowered property values rather than suppressing erotic speech). Beyond mere facial neutrality, Plaintiffs have made no compelling allegation that this policy was adopted by the VPA to target their specific religious practices. *See Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 113 S. Ct. 2217, 124 L. Ed. 2d 472 (1993). In *Church of Lukum Babalu Aye, Inc.*, the plaintiff provided a factual basis to conclude that legislation prohibiting animal sacrifice was meant only to prohibit the practice of Santeria, though the legislation did not explicitly mention the religion by name. *See id.* Here, though Plaintiffs grasp at straws to allege otherwise, the VPA's adoption of its Policy on Gender Identity was not the result

of any attempt to target or exclude Plaintiffs from VPA membership. Transphobia and discrimination on the basis of gender identity are, unfortunately, widespread problems in schools that impact a population of students at a particularly high risk of physical or mental injury. *See Parents Defending Education v. Olentangy Local School District Board of Education*, Case No. 2:23-cv-01595, 2023 WL 4848509, at *2 (S.D. Oh. E. Div. 2023) (collecting sources). Preventing discrimination at VPA-sanctioned events is undeniably a rational basis for the VPA to have adopted its policy, which was crafted without any intent to target Plaintiffs' religious practice. And, notably, as the VPA's athletic league itself is a public accommodation under the definition provided by the Vermont Public Accommodation Act, the VPA itself is bound to abide by Vermont law by preventing discrimination based on gender identity at events it sponsors. The VPA cannot, therefore, allow any member schools to violate this law without running afoul of its statutory obligations and risking sanction or closure of the entire program. The VPA's ability to operate and provide services in the state of Vermont requires its adherence to Vermont law—it was not only rational, but necessary, for the VPA to adopt this policy.

Furthermore, under the VPA policy, Plaintiffs are not prevented from having or sharing a particular viewpoint. The cited policy does not explicitly restrict any speech, and would only do so if such speech was found to be discriminatory. This particular kind of discriminatory speech can have severely negative effects on students' attendance and performance in school and their physical and psychological wellbeing—in other words, on the orderly operation of the school and its mission. *See Nuxoll ex rel. Nuxoll v. Indian Prairie Sch. Dist. No. 204*, 523 F.3d 668, 674 (7th Cir. 2008). "Speech that directly targets students on account of their gender identity must be separated from speech that discusses a political, social, or religious perspective in a non-derogatory manner." *Parents Defending Educ. v. Olentangy Loc. Sch. Dist. Bd. of Educ.*, No. 2:23-CV-01595,

2023 WL 4848509, at *11 (S.D. Ohio July 28, 2023); *see also* Emily Gold Waldman, *A Post-Morse Framework For Students' Potentially Hurtful Speech (Religious and Otherwise)*, 37 J.L. & Educ. 463, 492–96 (2008); *cf.* Eugene Volokh, *Comment: Freedom of Speech and Workplace Harassment*, 39 UCLA L. Rev. 1791, 1871–72 (1992) (suggesting that "[d]irected speech can be suppressed with minimum impact on First Amendment interests" because the political viewpoint of an ad hominem attack is often separable from the attack itself). The policy is not crafted to penalize or prevent specific religious ideas or broad statements thereof, and only restricts speech insofar as it amounts to discrimination against students on the basis of their gender identity. The VPA adopted this policy, which is based entirely upon Vermont law, to advance an undeniably important government interest, especially as an organization that serves so many children within the state.

The VPA's policy is not unique—countless city and state anti-discrimination statutes and policies nationwide provide protections to individuals based on their gender identity. If Plaintiffs' interpretation of this policy were to be accepted, it would invalidate many—if not all—of these neutral statutes that merely seek to protect individuals from discrimination. Such a consequence is unthinkable, and runs contrary to decades of public policy as well as the foundational values of our society. The VPA policy is not unconstitutional, and Plaintiffs' claims to the contrary must be dismissed.

### ii.    The VPA Has Not Interfered with Plaintiffs' Parental Right to Control the Upbringing of their Children

Next, the parents of Mid Vermont Christian student-athletes allege that the VPA's decision to expel Mid Vermont Christian from membership amounts to a violation of their constitutional rights to direct their children's education under the Fourteenth Amendment. Individuals have substantive due process rights, including "parents' fundamental right to make decisions concerning

the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 57 (2000). The scope of this right, however, is not unlimited. *See Leebaert v. Harrington*, 332 F.3d 134, 140 (2d Cir. 2003) (denying a parent's claim that his child's school violated his right to direct the education of his child by requiring the child to attend a health class over the parent's religious objection); *see also Goe v. Zucker*, 43 F.4th 19, 31 (2d Cir. 2022) (upholding dismissal of parents' claims that their Fourteenth Amendment rights as parents were violated by their children's schools denying vaccine medical exemption requests). Parents may not rely upon a vague and unlimited right to control their children where the alleged right they are actually asserting is more specific, and less fundamental. *See id.* Importantly, the existence of the general parental right to make decisions concerning the care, custody, and control of their children does not "suggest the existence of a fundamental right of every parent to tell a public school what his or her child will and will not be taught." *Id.* at 141. If no fundamental right is actually implicated, strict scrutiny does not apply. *Goe*, 43 F.4th at 32.Here, the parent Plaintiffs' claims are not rooted in any fundamental right. Though they allege that the VPA has violated a vague, general right to control their children's education or upbringing, the VPA is merely a voluntary athletic association that has no control over their children's schooling. According to these Plaintiffs, the VPA violated their rights on two grounds: first, by adopting its Policy on Gender Identity, and second, by "prohibiting" their children from participating in VPA athletic competitions. Neither of these purported violations, especially when viewed in the context of the VPA's place within these students' educational framework, is compelling.

These Plaintiffs chose to send their children to Mid Vermont Christian because they agreed with the school's ideals and wished to instill certain religious values in them. There is no state requirement that Mid Vermont Christian join the VPA (or any athletic league, for that matter). The

VPA was required by Vermont law to adopt its Policy on Gender Identity to ensure that students participating in athletic events constituting places of public accommodation receive all state-defined protections against discrimination. The VPA never attempted to regulate Mid Vermont Christian's curriculum, acceptance practices, team tryouts, or coaching interviews. Instead, the VPA only took action against Mid Vermont Christian after it made the decision to forfeit a girls' basketball game due to the mere fact that a transgender student played for the *other* team.

Mid Vermont Christian responded to the VPA's assessment of discipline by failing to avail itself of its administrative appeal rights, and then joining a different school athletic conference comprised of similarly-valued schools thereafter. Its students are unharmed and can now play basketball without fear of interacting with anyone possessing views different than their own. This is surely their prerogative, and one the VPA does not begrudge them. However, in order to participate in activities in places of public accommodation, these students and their parents must coexist with members of our society with whom they may not agree, or whose lifestyles are different from theirs. The mere existence of a transgender student playing basketball for a different school district does not unconstitutionally stifle Mid Vermont Christian's religious ideals or force its students to abandon their parents' preferred practices. The foundational education that these students will receive has remained unchanged throughout this entire experience, and their parents' choices with respect to their religious education have not been disturbed in any way.

These parents do not have a fundamental right to control the rules of the state-sanctioned scholastic athletic conference that their children's private school chose to join. There is likewise no fundamental right for these parents to demand that their children be completely insulated in all educational or athletic settings from individuals who do not share their same religious values, especially when their children are venturing beyond the Mid Vermont Christian campus and

17

interacting with other students whose parents have made different educational choices. The VPA had an undeniably reasonable basis for enforcing its Policy on Gender Identity against Mid Vermont Christian for its actions, in furtherance of an important state interest, and such enforcement does not amount to an unconstitutional encroachment on parental rights.

This cause of action must be dismissed.

### iii.   The VPA Did Not Retaliate Against Plaintiffs for Exercising their First Amendment Rights

A plaintiff asserting a First Amendment retaliation claim must establish that: "(1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech." *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015) (citing *Cox v. Warwick Valley Cent. School Dist.*, 654 F.3d 267, 272 (2d Cir.2011)) (internal quotations omitted). As a general rule, student speech in school is protected under the First Amendment unless it would "materially and substantially interfere with the requirements of appropriate discipline in the operation of the school." *Tinker v. Des Moines Indep. Cmty. School Dist.*, 393 U.S. 503, 509 (1969); *see also Cox*, 654 F.3d at 272.

Plaintiffs allege that they engaged in several categories of conduct that is protected by the First Amendment: (1) Mid Vermont Christian, as a school, engaging in protected speech and expressive conduct by teaching its beliefs to its students and having particular policies on gender identity and expression; (2) the minor Plaintiffs, as students, engaging in protected expressive association by refusing to participate in the basketball game against a transgender student; and (3) the individual Plaintiffs, as parents of students at Mid Vermont Christian, engaging in protected speech, association, and religious exercise by sending their children to Mid Vermont Christian. The VPA does not dispute that Plaintiffs' religious beliefs are protected by the First Amendment.

Likewise, the VPA has not attempted to change Mid Vermont Christian's curriculum, force Mid Vermont Christian to accept transgender students, or teach their children to perceive gender identity in any particular way. Mid Vermont Christian's religious practices coexisted peacefully with its VPA membership prior to February 2023. The sole reason for this dispute is that Mid Vermont Christian's girls' basketball team was assigned to play another member school's team with a transgender member, and it forfeited the game instead of playing against that student. VPA's application of its neutral, generally applicable Policy on Gender Identity to Mid Vermont Christian's conduct does not amount to retaliation against any Plaintiff.

The VPA disciplined Mid Vermont Christian after it explicitly targeted and discriminated against a specific student by singling her out, publicly questioning her identity, and making her vulnerable to hatred and ridicule.[3] The act of forfeiting the basketball game for this reason, especially in the context of interscholastic competition through a state-sanctioned athletic league, cannot be considered protected speech under *Tinker*. The VPA's expulsion of Mid Vermont Christian for this decision to forfeit the basketball game was a legitimate, non-retaliatory action taken to ensure the protection of all program participants as well as continued operation of the entire association.

Plaintiffs have not alleged any actionable retaliation.

## IV.   CONCLUSION

Based upon the foregoing analysis, Defendant Nichols respectfully requests that this Honorable Court dismiss all Counts of the Complaint against Defendant Nichols as a representative of the VPA in their entirety with prejudice.

---

[3] Plaintiffs' repeated insinuations that Mid Vermont Christian's basketball team was somehow made unsafe by this child's participation in the basketball game is not founded in any facts whatsoever. Plaintiffs' disregard for the potential negative impacts on this innocent minor cannot be ignored, as it provides important context to Plaintiffs' motivations in bringing this suit.

THE DEFENDANT,
**Jay Nichols, in his official capacity as Executive Director of the Vermont Principals' Association,**
By its Attorneys,

Dated: February 15, 2024

_____/s/ Steven J. Zakrzewski_____
Steven J. Zakrzewski, Esq.
GORDON REES SCULLY MANSUKHANI, LLP
95 Glastonbury Blvd, Suite 206
Glastonbury, CT 06033
T: (860) 494-7511
szakrzewski@grsm.com

20

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on February 15, 2024 I electronically filed this document with the

Clerk of Court using the CM/ECF system, which will provide electronic notification of such

filing to Counsel of Record for the Plaintiff, and to all other registered users.


       Steven J. Zakrzewski

Steven J. Zakrzewski

21