# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| **MID VERMONT CHRISTIAN SCHOOL**, on behalf of itself and its students and its students' parents; **ABEL GOODWIN**; **M.G.**, by and through her parents and natural guardians, Christopher and Bethany Goodwin; **CHRISTOPHER GOODWIN**, individually; **BETHANY GOODWIN**, individually; **O.P.**, by and through his father and natural guardian, Nathan Partington; and **NATHAN PARTINGTON**, individually,<br><br>Plaintiffs,<br><br>v.<br><br>**ZOIE SAUNDERS,** in her official capacity as Secretary of the Vermont Agency of Education and in her individual capacity; **JENNIFER DECK SAMUELSON**, in her official capacity as Chair of the Vermont State Board of Education and in her individual capacity; **WAITS RIVER VALLEY (UNIFIED #36 ELEMENTARY) SCHOOL BOARD**; and **JAY NICHOLS**, in his official capacity as the Executive Director of The Vermont Principals' Association and in his individual capacity,<br><br>Defendants. | Case No. 2:23-cv-00652<br><br><br>**PLAINTIFFS' REPLY TO STATE DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** |

# TABLE OF CONTENTS

Table of Authorities ............................................................................................ii

Introduction ...................................................................................................... 1

Argument .......................................................................................................... 1

    I.  Plaintiffs are likely to succeed on their free exercise claims. ........................... 1

        A.  There is ample evidence of religious hostility. ............................................ 2

        B.  Plaintiffs need not prove a discriminatory motive. ...................................... 3

        C.  The exclusionary criteria are not neutral or generally applicable facially or in effect. .................................................................................. 5

        D.  Act 73's criteria burden Mr. Partington's free exercise rights..................... 7

        E.  Act 73's exclusionary criteria fail strict scrutiny. ....................................... 9

    II.  Plaintiffs satisfy the remaining preliminary injunction factors. .................... 10

Conclusion ...................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Abbott v. Perez,*

　585 U.S. 579 (2018) ....................................................................................... 4

*Arlington Heights v. Metropolitan Housing Development Corp.,*

　429 U.S. 252 (1977) ....................................................................................... 4

*Carson v. Makin,*

　596 U.S. 767 (2022) ....................................................................................... 4

*Catholic Charities Bureau, Inc. v. Wisconsin Labor & Industry Review Commission,*

　605 U.S. 238 (2025) ....................................................................................... 5

*Central Rabbinical Congress of U.S. & Canada v. New York City Department of*

　*Health & Mental Hygiene,*

　763 F.3d 183 (2d Cir. 2014)........................................................................ 1, 4

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,*

　508 U.S. 520 (1993) ........................................................... 3, 5, 6, 7, 9, 10

*Fellowship of Christian Athletes v. San Jose Unified School District Board of*

　*Education,*

　82 F.4th 664 (9th Cir. 2023)........................................................................... 4

*Fulton v. Philadelphia,*

　593 U.S. 522 (2021) .................................................................................... 3, 9

*Hassan v. City of New York,*

　804 F.3d 277 (3d Cir. 2015)........................................................................... 4

*Janny v. Gamez,*

　8 F.4th 883 (10th Cir. 2021)....................................................................... 1, 4

*Kennedy v. Bremerton School District,*

　597 U.S. 507 (2022) ................................................................................ 1, 3, 5

*Mahmoud v. Taylor,*

606 U.S. 522 (2025) ................................................................................. 8

*Masterpiece Cakeshop v. Colorado Civil Rights Commission,*

584 U.S. 617 (2018) ................................................................................. 2

*Mid Vermont Christian School v. Saunders,*

151 F.4th 86 (2d Cir. 2025) ............................................................... 2, 10

*Mirabelli v. Bonta,*

No. 25A810, 2026 WL 575049 (U.S. Mar. 2, 2026) .................................. 8

*North American Soccer League, LLC v. United States Soccer Federation, Inc.,*

883 F.3d 32 (2d Cir. 2018)....................................................................... 2

*Reed v. Town of Gilbert,*

576 U.S. 155 (2015) ................................................................................. 5

*Roberts v. Neace,*

958 F.3d 409 (6th Cir. 2020) ................................................................... 4

*SAM Party of New York v. Kosinski,*

987 F.3d 267 (2d Cir. 2021)................................................................... 10

*Shrum v. City of Coweta, Oklahoma,*

449 F.3d 1132 (10th Cir. 2006) ............................................................... 2

*Tandon v. Newsom,*

593 U.S. 61 (2021) .............................................................................. 3, 5

*Thomas v. Review Board of Indiana Employment Security Division,*

450 U.S. 707 (1981) ................................................................................. 8

*Trinity Lutheran Church of Columbia, Inc. v. Comer,*

582 U.S. 449 (2017) ................................................................................. 8

*Wisconsin v. Yoder,*

406 U.S. 205 (1972) ................................................................................. 8

## Statutes

16 V.S.A. § 828 ................................................................................................. 1, 6

## Other Authorities

Act 73, 2025 Vt. Acts & Resolves No. 73 (2025) ......................................................... 7

*Hearing on H.454 Before the Senate Committee on Education*,

    Apr. 25, 2025, 2025-2026 Reg. Sess. (Vt. 2025) ....................................................... 1

Laurence H. Tribe,

    *American Constitutional Law* §§ 5–16 (3d ed. 2000) ................................................. 4

## Regulations

Vt. Admin. Code 7-1-3:2229....................................................................................... 6

## INTRODUCTION

*"It was important to me that the percentage [requirement] be guiding the decision because otherwise we're starting to send people back to religious schools ... ."*[1]

Senator Ram Hinsdale's words during the Act 73 debate are now reality. Act 73's geographic restriction, public-funding floor, and class size requirements (the "exclusionary criteria"), 16 V.S.A. § 828(a)(2)(C), (D), (E), bar all religious schools from public tuition funding. The exclusionary criteria violate the Free Exercise Clause "in various ways." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 525 (2022). One way is that they arise out of, and reflect, religious hostility, which is per se unconstitutional. Another is that they are not neutral or generally applicable.

The State folds these separate avenues into one, claiming they fail for lack of proving an anti-religious legislative motive. State Defs' Resp. in Opp., ECF 122, at 11 ("State's Resp.") That's legal error. For one thing, the record contains ample evidence of anti-religious animus. Senator Hinsdale's targeting is but a microcosm of Vermont's decades-long, universal effort to exclude religious schools. The means differ, but the end is the same. For another, to establish a free exercise violation, Plaintiffs "need not prove discriminatory purpose," *Janny v. Gamez*, 8 F.4th 883, 912 (10th Cir. 2021), or "animus, pure and simple," *Cent. Rabbinical Cong. of U.S. & Canada v. New York City Dep't of Health & Mental Hygiene*, 763 F.3d 183, 197 (2d Cir. 2014). For the fifth time, a religious school asks this Court to uphold the First Amendment and end such unequal treatment. The Court should do so swiftly.

## ARGUMENT

### I.    Plaintiffs are likely to succeed on their free exercise claims.

Plaintiffs seek a prohibitory injunction and need not satisfy a "heightened" standard. *Contra* State's Resp. at 8. The status quo is the "status quo ante"—"the last actual, peaceable uncontested status which preceded the pending

---

[1] *Hearing on H.454 Before the S. Comm. on Ed.*, Apr. 25, 2025, 2025-2026 Reg. Sess. (Vt. 2025) at 1:51:02–1:52:17, https://www.youtube.com/watch?v=w01PzeEpT0U.

1

controversy"—which was pre-Act 73 when Mid Vermont was eligible. *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 37, n.5 (2d Cir. 2018).

### A.  There is ample evidence of religious hostility.

The government violates the Free Exercise Clause when it "base[s] laws" on "hostility" to religion. *Masterpiece Cakeshop v. Colorado C.R. Comm'n*, 584 U.S. 617, 638 (2018). The record contains abundant evidence of hostility to Vermont's religious schools. Mem. in Supp., ECF 105-1, § I(A)(I) ("MPI"). The "historical background" preceding Act 73 includes a common, recurring theme: via varying government policies, religious schools were continually excluded from public benefits. *Masterpiece*, 584 U.S. at 639. And myriad "statements" by the "members of the decisionmaking body" reveal pervasive animosity toward religious schools. *Id.*

The State says these disparaging statements carry no weight because they can't be attributed to the Legislature as a whole. State's Resp. at 12–13. But it is enough that some officials expressed hostility to religion, the "record shows no objection to these comments from other" officials, and the comments have not been "disavowed in the briefs filed in this Court." *Masterpiece*, 584 U.S. at 636. In fact, *Masterpiece* relied primarily on one commissioner's comment yet set aside the full Commission's decision. *Id.* at 635; *accord Mid Vermont Christian Sch. v. Saunders,* 151 F.4th 86, 94 (2d Cir. 2025) (focusing on Nichols's statements).

To be clear, "[p]roof of hostility or discriminatory motivation may be sufficient ... but the Free Exercise Clause is not *confined* to actions based on animus." *Shrum v. City of Coweta, Okla.*, 449 F.3d 1132, 1145 (10th Cir. 2006) (emphasis added). The various statements are *relevant* in that they show hostility, but not *required*. *Infra* § (I)(B). The distinction between free exercise cases that turn on hostility and those that do not is apparent in how the Supreme Court treats the two. Where evidence of hostility or animus to religion "accompany" laws that burden religious exercise, the

Supreme Court simply "set[s] aside" such laws. *Kennedy*, 597 U.S. at 525 n.1. Yet where evidence of animus is lacking, the Court still applies strict scrutiny to laws that are not neutral or generally applicable. *Id.* at 525. So if intent matters at all, it goes to whether a law is per se unconstitutional or must face strict scrutiny.

### B. Plaintiffs need not prove a discriminatory motive.

Act 73's exclusionary criteria also violate the Free Exercise Clause because they are not neutral or generally applicable. *See* MPI §§ I(A)(2), (3). The State's main response is that Plaintiffs must prove the Legislature's "invidious intent" or "anti-religious animus" to succeed. State's Resp. at 11, 14–15; *see id.* at 13 ("discriminatory motive"). That's wrong for at least three reasons.

*First*, the Supreme Court has never required proof of subjective motivation under the Free Exercise Clause. The *Lukumi* Court did not rely on the city council's intent, but "the effect of [the] law in its real operation." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 535 (1993). Only two justices said that lawmakers' motivations were relevant, even if not necessary. *Id.* at 540–42 (opinion of Kennedy, J.); *see id.* at 558 (Scalia, J., concurring in part and in the judgment) ("The First Amendment does not refer to the purposes for which legislators enact laws, but to the effects of the laws enacted[.]"). And the Court's language—"*subtle* departures," "*covert* suppression," "*masked*" hostility, and "*gerrymander*"—makes clear that evidence of invidious intent is not needed. *Id.* at 534 (emphasis added).

Recent Supreme Court precedent confirms that motive is not required. In *Tandon v. Newsom,* the Court applied strict scrutiny to a gathering ban where there was no evidence of religious animosity. 593 U.S. 61, 62 (2021). In *Fulton v. Philadelphia*, the Court did not require discriminatory intent; it was enough that the government had a "mechanism for granting exceptions." 593 U.S. 522, 537 (2021). And in *Carson v. Makin,* the Court explained that the Free Exercise Clause

3

applies "fully" regardless if the religious discrimination is "express" or done through the "a party's reconceptualization of the public benefit." 596 U.S. 767, 785 (2022).

*Second*, the courts of appeal agree that intent is not a requisite. The Second Circuit held that "close scrutiny of laws" that burden the religious "is not limited to the context where such laws stem from animus, pure and simple." *Cent. Rabbinical,* 763 F.3d at 197. The Tenth Circuit held that a plaintiff "need not prove discriminatory purpose or religious animus to succeed" on a Free Exercise Claim. *Janny*, 8 F.4th at 912. The same goes for the Third Circuit, *Hassan v. City of N.Y.,* 804 F.3d 277, 309 (3d Cir. 2015) (Free Exercise Clause is not "confined to actions based on animus"), the Sixth Circuit, *Roberts v. Neace*, 958 F.3d 409, 415 (6th Cir. 2020) (motive of "faith-based bigotry" not needed; "benchmark is 'government neutrality,' not 'governmental avoidance of bigotry'"), and the Ninth Circuit, *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 686 (9th Cir. 2023) (en banc) (overturning requirement to "show[ ]" "targeting" as "clearly irreconcilable" with "Supreme Court authority"). In sum, "a law that is not neutral or that is not generally applicable can violate the Free Exercise Clause without regard to the motives of those who enacted the measure." Laurence H. Tribe, *American Constitutional Law* §§ 5–16, at 956 (3d ed. 2000).

The State fails to cite any Supreme Court free exercise case for its motive argument and cannot overcome the weight of circuit authority. Instead, it relies exclusively on Justice Kennedy's solo *Lukumi* opinion, equal protection cases (*e.g.*, *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977)), and Voting Rights Act cases (*e.g.*, *Abbott v. Perez,* 585 U.S. 579 (2018)). They don't control here.

*Third*, requiring proof of invidious intent turns the Free Exercise Clause on its head, reducing it to an "anti-retaliation" provision. But the First Amendment protects more. The Free Speech Clause, for example, forbids content-based speech

4

regulations, "regardless of the government's benign motive, content-neutral justification, or lack of animus toward the ideas contained in the regulated speech." *Reed v. Town of Gilbert*, 576 U.S. 155, 165 (2015) (citation modified). The same is true for the Establishment Clause. *See Cath. Charities Bureau, Inc. v. Wisconsin Lab. & Indus. Rev. Comm'n*, 605 U.S. 238, 250 (2025) (rejecting argument that religious accommodations violate the Clause only when they "are the product of 'invidious discrimination'"). "[I]llicit legislative intent is not the sine qua non of a violation of the First Amendment." *Reed*, 576 U.S. at 165 (citation modified). There is no reason to impose a mens rea element on free exercise claims alone. Act 73 thus triggers strict scrutiny regardless of the legislature's animosity, motive, or intent.

### C. The exclusionary criteria are not neutral or generally applicable facially or in effect.

Act 73's exclusionary criteria do not apply "in an evenhanded, across-the-board way." *Kennedy*, 597 U.S. at 527. The State claims the exclusionary criteria "apply equally" to independent schools. State's Resp. at 9. But the right question is whether the State treats *any* comparable secular school better than Mid Vermont, by judging them "against the asserted government interest that justifies the regulation at issue." *Tandon*, 593 U.S. at 62. The criteria are both overbroad and underinclusive to the State's purported interests. And "[i]t is no answer" that the State "treats some comparable secular [schools] as poorly" as Mid Vermont. *Id.*

The State invokes three interests. *First*, it claims "a compelling interest in providing a high-quality, cost-effective, and substantially equal education to every child." State's Resp. at 18. But the exclusionary criteria are drastically overbroad—they exclude "more religious [schools] than is necessary to achieve" that end—thus signaling non-neutrality. *Lukumi*, 508 U.S. at 538. For example, a sending district's cost turns on the number *students* in the district, not the number of eligible schools. And if the real concern is equal opportunities, the State could open public schools in

5

every district, make all approved independent schools eligible, or end the Town Tuition program. Instead, it cut only a handful of schools—and all the religious ones—leaving most students' choices untouched while denying religious families theirs. That's not equal treatment. "The neutrality of a law is suspect if First Amendment freedoms are curtailed to prevent isolated collateral harms not themselves prohibited by direct regulation." *Lukumi*, 508 U.S. at 539.

*Second*, the State says the exclusionary criteria ensure tuition payments go only to schools "necessary to fill the gaps" in the "public school infrastructure." State's Resp. at 18. This assumes that the only schools that are "necessary" to fill public school gaps are those that meet the exclusionary criteria. Yet the criteria are underinclusive: schools that don't meet the geographic restriction, public-funding floor, or class size requirement can still get public tuition. 16 V.S.A. § 828(a)(3), (4), (5), (6), (7). The exceptions undermine any claim that only private rural schools, with high ratios of tuitioned students and large class sizes, fill public-school gaps.

Out-of-state public schools, for example, remain eligible yet exempt from the exclusionary criteria. The State never explains how a public school in California can fill a gap in Vermont's public school infrastructure, but Mid Vermont could not. Expanding, not restricting, school options for Vermonters would better address those gaps. And such "categories of selection are of paramount concern when a law has the incidental effect of burdening" the religious. *Lukumi*, 508 U.S. at 542.

The State says the excepted tutorial programs, approved education programs, and therapeutic schools are irrelevant because they advance an interest in serving students that public schools aren't "well-suited" for. State's Resp. at 10. That "ipse dixit[ ]" doesn't suffice. *Id.* at 544. Plus, approved independent schools must enroll and "demonstrate the ability to serve students with disabilities," making Mid Vermont comparable at least to therapeutic schools. Vt. Admin. Code 7-1-3:2229.

The State also contends that private schools meeting educational quality standards are eligible because they "function" like public schools. State's Resp. at 10. But they're still private schools. And the fact that at least 18 private schools that do *not* meet those standards are eligible undercuts any claim that heightened State oversight is the real interest at issue. The result is a "pattern of exemptions" that "contributes to the gerrymander." *Lukumi*, 508 U.S. at 537.

*Third*, the State cites interests in "school consolidation" and "streamlin[ing] the education system." State's Resp. at 19. To this end, the exclusionary criteria are overbroad because excluding *private* religious schools has no bearing at all on *public* school consolidation. If the State's goal is streamlining and consolidating the public school system, "the subject of the regulation should be [consolidation] itself" not private schools that "bear some general relation" to the system. *Lukumi*, 508 U.S. at 539. Act 73 already addresses consolidation, *see* § 3, making the exclusionary criteria superfluous. The criteria are also underinclusive because several secular schools remain eligible, undermining any alleged interest in school consolidation.

Lastly, the fact that Act 73 grandfathers-in tuitioned students still attending now-ineligible schools further proves that the State has no real, legitimate (let alone compelling) interest that justifies the exclusionary criteria. *See* Act 73, 2025 Vt. Acts & Resolves No. 73 § 22 (2025).

**D. Act 73's criteria burden Mr. Partington's free exercise rights.**

The State's *Mahmoud* arguments also fail. First, Mr. Partington need not explain the "specific[s]" of how a particular subject would interfere with O.P.'s upbringing. State's Resp. at 16–17. It's enough that he believes secular schooling, in whole, interferes with O.P.'s religious development by exposing him "to worldly influences and ideas that are contrary to [his] religious beliefs and convictions." Partington Decl., ECF 105-2, ¶¶ 3–6. It is the entirety of secular education that

compelled Mr. Partington to first homeschool, and later to send his children to Mid Vermont. *Id.* ¶¶ 8–11. The State cannot demand that he "better explain" how secular education interferes with the religious development of his children. *See Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.*, 450 U.S. 707, 714 (1981) ("religious beliefs need not be acceptable, logical, consistent, or comprehensible").

For example, in *Wisconsin v. Yoder*, the Amish objected to formal education beyond eighth grade, not due to particular curriculum, but "generally" because they viewed such education "as an impermissible exposure of their children to a 'worldly' influence in conflict with their beliefs." 406 U.S. 205, 211–12 (1972). To be sure, *Mahmoud v. Taylor* thoroughly analyzed certain books at issue there because parents sought a *specific* opt-out from that curriculum. 606 U.S. 522, 540–42 (2025). But the Supreme Court recently rejected a narrow reading of *Mahmoud* as "focused on uniquely coercive curricular requirements." *Mirabelli v. Bonta*, No. 25A810, 2026 WL 575049, at *2 (U.S. Mar. 2, 2026). Mr. Partington has "a religious obligation to raise [his] children in accordance with [his] beliefs," *id.*, which dictates that he opt them out from secular school entirely, *see Yoder*, 406 U.S. at 211.

Second, the State contends Mr. Partington's burden is not the same as *Yoder* because here the penalty is not the threat of criminal prosecution. State's Resp. at 17. But *Mahmoud* rejected this argument: "when the government chooses to provide public benefits," it "cannot condition [their] availability on parents' willingness to accept a burden on their religious exercise." *Mahmoud*, 606 U.S. at 561 (citation modified). Vermont places an "indirect" penalty on Mr. Partington: his "freedom" to choose Mid Vermont "comes at the cost of the automatic and absolute exclusion from the benefits of a public program for which [he] is otherwise fully qualified." *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 462–63 (2017).

**E. Act 73's exclusionary criteria fail strict scrutiny.**

Act 73's exclusionary criteria cannot satisfy strict scrutiny. To start, the State lacks a compelling interest. That the State continues to fund myriad schools that need not comply with the geographic restriction, public-funding floor, or minimum class sizes proves that the State does not truly seek to further "an interest of the highest order." *Lukumi*, 508 U.S. at 547 (citation modified). Plus, the State's current purported compelling interests fail because they are stated at too "high [a] level of generality." *Fulton*, 593 U.S. at 541. So "the question, then, is not whether" the State has an interest in applying its exclusionary criteria "generally, but whether it has such an interest in denying an exception" to Mid Vermont Christian. *Id*. The State fails to explain how listing Mid Vermont as eligible would bar its ability to provide "high-quality, cost-effective, and substantially equal education." State's Resp. at 18. Or how it would hinder filling public school "gaps." Or how it would deter school consolidation. Vermont can advance its interests "in a manner that does not burden religion," so "it must do so." *Fulton*, 593 U.S. at 541.

Nor are the exclusionary criteria narrowly tailored. As explained above, *supra* § II(C), the criteria are both "overbroad or underinclusive" to their stated ends. *Lukumi*, 508 U.S. at 546. The State could further its interests in providing high quality, cost-effective, and equal education, or in filling gaps in public school infrastructure, through "narrower" regulations that burden "religion to a far less degree." *Id.* For example, the State could give Vermonters "equal educational opportunities" by equally making *all* approved independent schools eligible for public tuition, as they were before Act 73. And because school choice lies with the tuitioned family, each selected school would therefore fill at least some "gaps" in the public school infrastructure. So more school options is a less restrictive alternative.

9

## II.    Plaintiffs satisfy the remaining preliminary injunction factors.

*Irreparable harm.* Plaintiffs' harm is not purely economic. First, the free exercise violation alone "unquestionably constitutes irreparable injury." *Mid Vermont,* 151 F.4th at 96 (citation omitted). Second, Mid Vermont is irreparably harmed *right now* because it is listed as "ineligible" for public tuition, impeding its recruiting efforts and disincentivizing students from enrolling. Fogg Decl., ECF 105-3, ¶¶ 26–36 (describing harm). As to O.P., enjoining Defendants now would not harm them, but when O.P. is denied tuition, he will be unable to recover damages after-the-fact unless Defendants agree to waive sovereign immunity. The same is true for Mid Vermont. The School cannot wait until a student is denied, then file potentially endless lawsuits to get damages that are likely barred by immunity. And current students are excluded from the Dual Enrollment and Early College Programs right now as well. *Id.* ¶ 31. Absent an injunction ordering the State to list Mid Vermont as eligible, Plaintiffs will continue to suffer.

*Equities.* "[S]ecuring First Amendment rights is in the public interest." *SAM Party of N.Y. v. Kosinski,* 987 F.3d 267, 278 (2d Cir. 2021). No matter the policy reasons behind excluding private religious schools, Act 73 unfairly and unconstitutionally treats them as second-class. The State will fund students to attend Burke Mountain Academy, Killington Mountain School, Stratton Mountain School, and Okemo Mountain School to ski, skate, and snowboard, for instance, but it continues to ostracize Vermont's religious schools and the families who desire to attend them. There is nothing equitable about that. Vermont "devalues religious" education by judging it to be of "lesser import," *Lukumi,* 508 U.S. at 537, which violates the First Amendment.

## CONCLUSION

The Court should grant the motion for preliminary injunction.

Dated: March 6, 2026                     Respectfully submitted,


                                          *s/ David A. Cortman*
                                          David A. Cortman
                                          AZ Bar No. 29490
                                          Ryan J. Tucker*
                                          AZ Bar No. 034382
                                          Katherine Anderson*
                                          AZ Bar No. 033104
                                          ALLIANCE DEFENDING FREEDOM
                                          15100 N. 90th Street
                                          Scottsdale, AZ 85260
                                          Telephone: (480) 444-0020
                                          rtucker@adflegal.org
                                          dcortman@adflegal.org
                                          kanderson@adflegal.org

                                          Jacob E. Reed*
                                          VA Bar No. 97181
                                          ALLIANCE DEFENDING FREEDOM
                                          44180 Riverside Parkway
                                          Lansdowne, VA 20176
                                          Telephone: (571) 707-4655
                                          jreed@ADFlegal.org

                                          *Attorneys for Plaintiffs*
                                          *Admitted pro hac vice*

11

## CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will serve all counsel of record.

<u>*s/ David A. Cortman*</u>
*Counsel for Plaintiffs*

12